IN THE UNITED STATES DISTRICT COURT
IN THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| DAVID BLACKBURN | ) | CASE NO. |
| 1911 North Veterans Lane | ) | |
| Unit 74 | ) | JUDGE: |
| Findlay, Ohio 45840 | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **COMPLAINT FOR DAMAGES** |
| | ) | **AND REINSTATEMENT** |
| CREATIVE PLASTIC CONCEPTS, LLC | ) | |
| 206 South Griffith Street | ) | **JURY DEMAND ENDORSED** |
| Sycamore, Ohio 44882 | ) | **HEREIN** |
| | ) | |
| **Serve also:** | ) | |
| CREATIVE PLASTIC CONCEPTS, | ) | |
| LLC | ) | |
| c/o Corporation Service Company | ) | |
| 50 West Broad Street, Suite 1330 | ) | |
| Columbus, Ohio 43215 | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff, David Blackburn, by and through undersigned counsel, as his Complaint against

the Defendant, states and avers the following:

**PARTIES, VENUE, & JURISDICTION**

1. Blackburn is a resident of the City of Findlay, County of Hancock, State of Ohio.

2. Creative Plastic Concepts, LLC (hereinafter "CPC") is a domestic limited liability company

    that operated a business located at 206 South Griffith Street, Sycamore, Wyandot County, Ohio

    44882.

3. CPC was at all times hereinafter mentioned an employer within the meaning of R.C. § 4112.01

    *et seq*.

4. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that Blackburn is alleging a Federal Law Claim under the Civil Rights Act of 1964, 42 U.S.C. 2000e-2 and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*

5. All material events alleged in this Complaint occurred in Hancock County.

6. This Court has supplemental jurisdiction over Blackburn's state law claims pursuant to 28 U.S.C. § 1367 as Blackburn's state law claims are so closely related to his federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

8. Within 300 days of the conduct alleged below, Blackburn filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 532-2021-02084 against CPC ("Blackburn EEOC Charge").

9. Blackburn dually filed the Blackburn EEOC Charge with the EEOC and the Ohio Civil Rights Commission.

10. On or about July 30, 2021, the EEOC informed Blackburn that it would be issuing a Right-to-Sue letter.

## **FACTS**

11. Blackburn is a former employee of CPC.

12. On or around October 26, 2020, Blackburn began working for CPC.

13. CPC employed Blackburn as a Plant Maintenance Manager.

14. Blackburn suffers from colitis ("Medical Condition").

15. As a result of his Medical Condition, Blackburn suffered "flare-ups" where he experienced intense pain and bowel issues.

2

16. Blackburn's Medical Condition constitutes a physical impairment.

17. Blackburn's Medical Condition substantially impaired one or more of his major life activities, including working.

18. As a result of his Medical Condition, Blackburn is and was disabled within the meaning of ADA.

19. As a result of his Medical Condition, Blackburn is and was disabled within the meaning of R.C. § 4112.01 *et seq.*

20. Travis Ritter worked for CPC as Plant Manager.

21. Ritter was Blackburn's immediate superior.

22. During all material events asserted herein, Ritter has and/or had authority to hire, fire, and/or discipline employees.

23. When Blackburn began working at CPC, he disclosed to Ritter that he suffers from the Medical Condition.

24. Ritter perceived Blackburn's Medical Condition to impair one or more of his major life activities, including working, substantially.

25. Despite any actual or perceived disabling condition, Blackburn was still able to fulfill the essential functions of his job, with or without accommodation.

26. During the course of his time working at CPC, Blackburn had several flare-ups of his Medical Condition.

27. When Blackburn had flare-ups of his Medical Condition, he took a day or two off work.

28. When Blackburn took a day or two off work due to his Medical Condition, Ritter was irritated.

29. When Blackburn took a day or two off work due to his Medical Condition, Ritter suggested Blackburn just work from his office.

30. Blackburn was unable to work from his office because the distance from his office to the restrooms was too far.

31. Blackburn explained to Ritter that he was unable to work from his office because the distance from his office to the restrooms was too far.

32. Ritter did not engage in an interactive discussion with Blackburn to accommodate his disability.

33. An accommodation was available that did not pose undue burden to CPC.

34. CPC's failure to accommodate Blackburn was an adverse employment action.

35. CPC's failure to accommodate Blackburn was an adverse action.

36. CPC previously hired a company to do a safety audit of the plant ("Safety Audit").

37. Blackburn became aware CPC previously hired a company to do the Safety Audit.

38. In or around mid-January 2021, Blackburn discovered the list of safety issues discovered during the Safety Audit ("Safety Audit List").

39. The Safety Audit List contained approximately 60 safety issues.

40. The Safety Audit List contained issues that needed to be addressed for the safety of employees at CPC.

41. The Safety Audit List contained issues that violated OSHA regulations.

42. CPC was aware of the Safety Audit List.

43. CPC had not addressed the issues on the Safety Audit List.

44. In January 2021, Blackburn brought the Safety Audit List to the attention of Ritter ("First Safety Report").

45. In his First Safety Report, Blackburn sought permission to begin addressing the violations on the Safety Audit List.

4

46. In response to Blackburn's First Safety Report, Ritter told him to keep doing his Project Management job, and safety would be dealt with later.

47. Blackburn's Project Management job was scheduled to take many months.

48. Blackburn was concerned if CPC waited to address the Safety Audit List, an employee was going to get severely injured or even killed.

49. The CPC workplace was unsafe ("Unsafe Workplace").

50. In the Unsafe Workplace, employees had received electric shocks.

51. In the Unsafe Workplace, oil covered most surfaces, creating a risk of slipping and falling for employees.

52. In the Unsafe Workplace, employees were slipping and falling.

53. In the Unsafe Workplace at CPC, there have been at least one fatality and one dismemberment.

54. In January and February 2021, Blackburn complained to Ritter about the Safety Audit List still being unaddressed several times ("Continued Safety Reports").

55. Blackburn made Continued Safety Reports verbally.

56. Blackburn made Continued Safety Reports to Ritter and Jake Warrington via email.

57. Warrington was environmental health and safety manager for CPC.

58. Blackburn's Continued Safety Reports included reminding Ritter the safety issues were in violation of OSHA.

59. Ritter refused to allow Blackburn to address the safety issues listed in the Safety Audit List.

60. Ritter ratified the unsafe workplace by refusing to fix the safety issues in the Safety Audit List.

61. On or about February 8, 2021, Blackburn went to the doctor because he was not feeling well.

62. At his February 8 doctor's appointment, Blackburn's doctor diagnosed him with severe depression ("New Diagnosis").

63. At his February 8 doctor's appointment, Blackburn's doctor prescribed him medication for his New Diagnosis.

64. At his February 8 doctor's appointment, Blackburn's doctor ordered him to take a week off work due to his New Diagnosis ("Doctor's Orders").

65. Blackburn's New Diagnosis constitutes a mental and/or physical impairment.

66. Blackburn's New Diagnosis substantially impaired one or more of his major life functions, including working, sleeping, eating, thinking, and communicating with others.

67. CPC perceived Blackburn as disabled.

68. As a result of his New Diagnosis, Blackburn is and was considered disabled within the meaning of the ADA.

69. As a result of his New Diagnosis, Blackburn is and was considered disabled within the meaning of R.C. § 4112.01 *et seq.*

70. Despite any actual or perceived disabling condition, Blackburn was still able to fulfill the essential functions of his job, with or without accommodation.

71. After his February 8 doctor's appointment, Blackburn immediately texted and emailed Danielle (Last Name Unknown), the Human Resources Manager, that he needed time off due to his disability according to his Doctor's Orders.

72. During all material events asserted herein, Danielle LNU has and/or had authority to hire, fire, and/or discipline employees.

73. Danielle LNU did not participate in the decision to hire Blackburn.

74. Danielle LNU did not respond to Blackburn's request for time off.

75. When Danielle LNU did not respond, Blackburn texted and emailed Ritter that he needed time off due to his disability according to his Doctor's Orders.

76. Ritter did not respond to Blackburn's request for time off.

77. Blackburn continued trying to contact Danielle LNU and Ritter between February 8, 2021, and on or about February 17, 2021 ("Attempts at Communication").

78. Blackburn's Attempts at Communication involved emailing and texting every day.

79. Blackburn received no response to his Attempts at Communication from Danielle LNU.

80. Blackburn received no response to his Attempts at Communication from Ritter.

81. Blackburn's request for time off was a request for accommodation.

82. Blackburn's request for accommodation was reasonable.

83. CPC could have granted Blackburn's request for accommodation without undue burden on the company.

84. Danielle LNU failed to engage in an interactive discussion with Blackburn to determine a reasonable accommodation.

85. Ritter failed to engage in an interactive discussion with Blackburn to determine a reasonable accommodation.

86. On or about February 18, 2021, Warrington informed Blackburn that CPC was terminating his employment.

87. Warrington informed Blackburn the reason for termination was that he had requested an exit interview and he was telling vendors he did not work at CPC.

88. Blackburn had not spoken with any vendors.

89. Blackburn had not told anyone he was no longer working at CPC.

90. Blackburn had not requested an exit interview.

91. CPC's purported reason for termination was not the actual reason for termination.

92. CPC's purported reason for termination is pretext for disability discrimination.

93. Upon information and belief, Defendant has a progressive disciplinary policy ("Progressive Discipline Policy").

94. Defendant has used Progressive Discipline Policy when disciplining non-disabled employees.

95. Defendant has used Progressive Discipline Policy when disciplining employees who have not reported safety concerns.

96. Under Progressive Discipline Policy, Blackburn had not received any verbal warnings.

97. Under Progressive Discipline Policy, Blackburn had not received any written warnings.

98. Under Progressive Discipline Policy, Blackburn had not been suspended.

99. Defendant skipped steps under the Progressive Discipline Policy when they terminated Blackburn's employment.

100. Skipping steps under the Progressive Discipline Policy is an adverse employment action.

101. Skipping steps under the Progressive Discipline Policy is an adverse action.

102. Terminating Blackburn's employment was an adverse employment action.

103. Terminating Blackburn's employment was an adverse action.

104. Defendant knowingly skipped steps under the Progressive Discipline Policy when they terminated Blackburn's employment.

105. Defendant intentionally skipped steps under the Progressive Discipline Policy when they terminated Blackburn's employment.

106. Defendant willfully skipped steps under the Progressive Discipline Policy when they terminated Blackburn's employment.

107. Defendant knowingly committed an adverse employment action against Blackburn.

108. Defendant intentionally committed an adverse employment action against Blackburn.

109. Defendant willfully committed an adverse employment action against Blackburn.

110. Defendant knowingly committed an adverse action against Blackburn.

111. Defendant intentionally committed an adverse action against Blackburn.

112. Defendant willfully committed an adverse action against Blackburn.

113. Defendant knowingly terminated Blackburn employment.

114. Defendant intentionally terminated Blackburn's employment.

115. Defendant willfully terminated Blackburn's employment.

116. The above facts demonstrate Defendant engaged in a pattern and practice of disability discrimination.

117. On or about February 18, 2021, Defendant terminated Blackburn's employment because of his disability.

118. On or about February 18, 2021, Defendant terminated Blackburn's employment because of his perceived disability.

119. On or about February 18, 2021, Defendant terminated Blackburn's employment because he opposed disability discrimination.

120. On or about February 18, 2021, Defendant terminated Blackburn's employment because of his reports of safety hazards.

121. As a direct and proximate result of Defendant's conduct, Blackburn suffered and will continue to suffer damages, including economic and emotional distress damages.

### COUNT I: DISABILITY DISCRIMINATION IN VIOLATION OF ADA

122. Blackburn restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

123. Blackburn suffers from the Medical Condition.

124. Blackburn suffers from the New Diagnosis.

125. Blackburn is disabled.

126. In the alternative, Ritter perceived Blackburn as being disabled.

127. Blackburn's conditions constituted a physical and/or mental impairment.

128. Blackburn's condition substantially impaired one or more of his major life activities, including working, sleeping, eating, thinking, and communicating with others.

129. Ritter perceived Blackburn's condition to impair one or more of his major life activities substantially, including working, sleeping, eating, thinking, and communicating with others.

130. Ritter treated Blackburn differently than other similarly-situated employees based on his disabling condition.

131. Ritter treated Blackburn differently than other similarly-situated employees based on his perceived disabling condition.

132. On or about January 18, 2021, Defendant terminated Blackburn's employment without just cause.

133. Defendant terminated Blackburn's employment based his disability.

134. Defendant terminated Blackburn's employment based his perceived disability.

135. Defendant violated ADA when it discharged Blackburn based on his disability.

136. Defendant violated ADA when it discharged Blackburn based on his perceived disability.

137. Defendant violated ADA by discriminating against Blackburn based on his disabling condition.

138. Defendant violated ADA by discriminating against Blackburn based on his perceived disabling condition.

139. Blackburn informed CPC of his disabling condition.

140. Blackburn requested accommodations from CPC to assist with his disabilities, including time off work.

141. Blackburn's requested accommodations were reasonable.

142. There was an accommodation available that would have been effective and would have not posed an undue hardship to CPC.

143. CPC failed to engage in the interactive process of determining whether Blackburn needed an accommodation.

144. CPC failed to provide an accommodation.

145. Blackburn suffered emotional distress as a result of Defendant's conduct, and is entitled emotional distress damages pursuant to ADA.

146. As a direct and proximate result of Defendant's conduct, Blackburn suffered and will continue to suffer damages, including economic and emotional distress damages.

## COUNT II: DISABILITY DISCRIMINATION IN VIOLATION OF R.C. § 4112.01 *et seq.*

147. Blackburn restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

148. Blackburn suffers from the Medical Condition.

149. Blackburn suffers from the New Diagnosis.

150. Blackburn is disabled.

151. In the alternative, Ritter perceived Blackburn as being disabled.

152. Blackburn's conditions constituted a physical and mental impairment.

153. Blackburn's condition substantially impaired one or more of his major life activities, including working, sleeping, eating, thinking, and communicating with others.

154. Ritter perceived Blackburn's condition to substantially impair one or more of his major life activities, including working, sleeping, eating, thinking, and communicating with others.

155. Ritter treated Blackburn differently than other similarly-situated employees based on his disabling condition.

156. Ritter treated Blackburn differently than other similarly-situated employees based on his perceived disabling condition.

157. On or about January 18, 2021, Defendant terminated Blackburn's employment without just cause.

158. Defendant terminated Blackburn's employment based his disability.

159. Defendant terminated Blackburn's employment based his perceived disability.

160. Defendant violated R.C. § 4112.02 when it discharged Blackburn based on his disability.

161. Defendant violated R.C. § 4112.02 when it discharged Blackburn based on his perceived disability.

162. Defendant violated R.C. § 4112.02 by discriminating against Blackburn based on his disabling condition.

163. Defendant violated R.C. § 4112.02 by discriminating against Blackburn based on his perceived disabling condition.

164. Blackburn suffered emotional distress as a result of Defendant's conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq*.

165. Blackburn informed Defendant of his disabling condition.

166. Blackburn requested accommodations from Defendant to assist with his disabilities, including time off work.

167. Blackburn's requested accommodations were reasonable.

168. There was an accommodation available that would have been effective and would have not posed an undue hardship to CPC.

169. Defendant failed to engage in the interactive process of determining whether Blackburn needed an accommodation.

170. Defendant failed to provide an accommodation.

171. Defendant violated R.C. § 4112.02 by failing to provide Blackburn a reasonable accommodation.

172. Blackburn suffered emotional distress as a result of Defendant's conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq*.

173. As a direct and proximate result of Defendant's conduct, Blackburn suffered and will continue to suffer damages, including economic and emotional distress damages.

## COUNT III: RETALIATION IN VIOLATION OF ADA

174. Blackburn restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

175. Blackburn requested accommodations for his disabilities.

176. Requesting an accommodation is a protected activity under ADA.

177. Blackburn opposed the disability discrimination he experienced.

178. ADA prohibits employers from retaliating against an employee for opposing discrimination.

179. Subsequent to Blackburn's request for accommodation, Defendant terminated his employment.

180. Subsequent to Blackburn's opposing discrimination, Defendant terminated his employment.

181. Defendant terminated Blackburn's employment in retaliation for his protected activity.

182. As a direct and proximate result of Defendant's conduct, Blackburn suffered and will continue to suffer damages, including economic and emotional distress damages.

## COUNT IV: RETALIATION IN VIOLATION OF R.C. § 4112.01 *et seq.*

183. Blackburn restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

184. Blackburn requested accommodations for his disabilities.

185. Requesting an accommodation is a protected activity under R.C. § 4112.01 *et seq.*

186. Blackburn opposed the disability discrimination he experienced.

187. R.C. § 4112.01 *et seq.* prohibits employers from retaliating against an employee for opposing discrimination.

188. Subsequent to Blackburn's request for accommodation, Defendant terminated his employment.

189. Subsequent to Blackburn's opposing discrimination, Defendant terminated his employment.

190. Defendant terminated Blackburn's employment in retaliation for his protected activity.

191. As a direct and proximate result of Defendant's conduct, Blackburn suffered and will continue to suffer damages, including economic and emotional distress damages.

## COUNT V: VIOLATION OF OHIO WHISTLEBLOWER STATUTE R.C. § 4113.52.

192. Blackburn restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

193. In January 2021, Blackburn reported outstanding OSHA violations contained in a Safety Audit List to CPC and his supervisor.

194. Blackburn reasonably believed that the safety violations at CPC constituted a felony under Ohio and/or federal law.

14

195. In the alternative, Blackburn reasonably believed that the safety violations at CPC constituted a criminal act that threatens the public's health or safety in addition to the health and safety of CPC employees.

196. Blackburn verbally complained to Defendant regarding the safety violations.

197. Blackburn complained in writing to Defendant regarding the safety violations.

198. Blackburn gave Defendant an opportunity to cure the reported misconduct.

199. Defendant retaliated against Blackburn by terminating his employment based on his complaints regarding OSHA violations.

200. Defendant's termination of Blackburn was in violation of R.C. § 4113.52.

201. As a direct and proximate result of Defendant's conduct, Blackburn suffered and will continue to suffer damages, including economic and emotional distress damages.

## COUNT VI: WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY

202. Blackburn restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

203. A clear public policy exists and is manifested in Ohio statutes and/or administrative regulations, or in the common law, against terminating and/or retaliating against an employee because he engages in protected activity under Ohio law.

204. A clear public policy exists and is manifested in R.C. § 4101.11 stating that "[e]very employer shall furnish employment which is safe for the employees engaged therein," and "[n]o employer shall require, permit, or suffer any employee to go or be in any employment or place of employment which is not safe…"

205. The Ohio Supreme Court recognized that Ohio allows an individual to seek a public policy claim if she is terminated in retaliation for reporting to her employer that she is forced to work

in an unsafe work environment. *Greeley v. Miami Valley Maintenance Contrs., Inc.*, (1990), 49 Ohio St.3d 228. *See also Pytlinski v. Brocar Products, Inc.*, 94 Ohio St.3d 77 (Ohio 2011); *Jenkins v. Cent. Transp., Inc.*, No. 09CV525, 2010 WL 420027 (N.D. Ohio Jan. 29, 2010).

206. A clear public policy exists and is manifested in Ohio statutes, and/or administrative regulations, or in the common law, against terminating an employee based on his complaints of dangerous, unsafe, or illegal activity.

207. Blackburn complained to Ritter regarding the unsafe workplace.

208. Blackburn complained to Ritter regarding no action taken for the Safety Audit List.

209. Blackburn complained to Ritter regarding OSHA violations.

210. Defendant terminated Blackburn in retaliation for his complaints regarding workplace safety.

211. Defendant's termination of Blackburn jeopardizes these public policies.

212. Defendant's termination of Blackburn was motivated by conduct related to these public policies.

213. Defendant had no overriding business justification for terminating Blackburn.

214. As a direct and proximate result of Defendant's conduct, Blackburn has suffered and will continue to suffer damages, including economic and emotional distress damages.

## DEMAND FOR RELIEF

WHEREFORE, Plaintiff David Blackburn demands from Defendant the following:

(a) Issue an order requiring Defendant to restore Blackburn to one of the positions to which he was entitled by virtue of his application and qualifications, and expunge his personnel file of all negative documentation;

(b) An award against each Defendant of compensatory and monetary damages to compensate Blackburn for lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

(c) An award of punitive damages against each Defendant in an amount in excess of $25,000;

(d) An award of reasonable attorneys' fees and non-taxable costs for Blackburn's claims as allowable under law;

(e) An award of the taxable costs of this action; and

(f) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

*/s/ Paul Filippelli*_____
Sean Costello (0068612)
Trisha Breedlove (0095852)
Paul Filippelli (0097085)
**THE SPITZ LAW FIRM, LLC**
1103 Schrock Road, Suite 307
Columbus, OH 43229
Phone: (216) 291-4744
Fax:  (216) 291-5744
Email: sean.costello@spitzlawfirm.com
Email: trisha.breedlove@spitzlawfirm.com
Email: paul.filippelli@spitzlawfirm.com

*Attorneys For Plaintiff David Blackburn*

## JURY DEMAND

Plaintiff David Blackburn demands a trial by jury by the maximum number of jurors permitted.

*/s/ Paul Filippelli*_____
Paul Filippelli (0097085)